# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1390V

|  |  |
|---|---|
| KRYSTAL KILGORE,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 29, 2023 |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Jennifer A. Shah*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT[1]

On May 24, 2021, Krystal Kilgore filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, or in the alternative a caused-in-fact injury, after receiving an Hepatitis B ("Hep B") vaccine on March 14, 2019. Petition at 1, ¶¶ 1, 14. She further alleges that her "SIRVA symptoms persisted for more than six months." *Id.* at ¶ 10; *see* Section 11(c)(1)(D) (the Vaccine Act's severity requirement).

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

The parties dispute Petitioner's ability to establish severity. For the reasons set forth below, I find Petitioner likely suffered the residual effects of her SIRVA for more than six months, and she has satisfied the other requirements of a compensable Table SIRVA injury. Petitioner is thus entitled to compensation under the Vaccine Act.

## I.  Relevant Procedural History

Along with the Petition, Ms. Kilgore filed a declaration[3] and the medical records required under the Vaccine Act. Exhibits 1-8, ECF No. 1; *see* Section 11(c). Approximately, two months later, she filed documentation related to her workers' compensation payments. Exhibits 9-10, filed June 23, 2021, ECF No. 8. On November 2, 2021, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 9.

In response to a request from Respondent, Petitioner provided her full workers' compensation file. Exhibit 11, filed May 3, 2022, ECF No. 15. On June 9, 2022, she forwarded a demand and supporting documentation to Respondent. Status Report, filed Sept. 13, 2022, ECF No. 19. Four months later, she indicated there were no updated medical records in this case as she was no longer seeking treatment for her alleged SIRVA injury. Status Report, filed Jan. 18, 2023, ECF No. 21.

On March 3, 2023, Respondent filed his Rule 4(c) Report, opposing compensation in this case. ECF No. 23. He maintains that "[P]etitioner has failed to establish entitlement to compensation, because the records do not demonstrate that her symptoms endured for at least six months following vaccination." *Id.* at 7. Characterizing Petitioner's injury as resolved approximately two months post-vaccination without the need for a steroid injection which could provide only temporary relief, Respondent emphasizes that Petitioner did not seek treatment again until late May 2020, more than fourteen months later.

The matter is now ripe for adjudication.

## II.  Finding of Fact Regarding Duration

At issue is whether Petitioner continued to suffer the residual effects of SIRVA for more than six months. Section 11(c)(1)(D)(i) (statutory six-month severity requirement).

---

[3] Petitioner's declaration was not notarized or signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exhibit 2.

2

### A. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). "The medical records made at the time treatment was sought or provided are far more reliable than the witnesses' testimony, five years later, to the contrary." *Id.* at *20.

However, this rule does not always apply. The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.,* 23 Cl. Ct. 726, 733 (1991) (quoting with approval the standard used by the special master below), *aff'd per curiam,* 968 F.2d 1226 (Fed. Cir. 1992). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The Court of Federal Claims has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon

demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other relevant and reliable evidence contained in the record. *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

The requirements of Section 11(c)(1) include a requirement that a petitioner must have suffered the residual effects of the injury for more than six months post-vaccination, must have died as a result of the vaccination, or must have suffered an injury which resulted in inpatient hospitalization and surgical intervention. Section 11(c)(1)(D). As stated by Congress when amending the Vaccine Act in 1987, the six-month severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373. The only exception to this original rule for vaccine-related injuries not resulting in death is the alternative added in 2000, a showing that the vaccine injury required inpatient hospitalization and surgical intervention. *Children's Health Act of 2000*, Pub. L. No. 106–310, § 1701, 114 Stat. 1101, 1151 (2000) (codified as amended at 42 U.S.C. § 300aa–11(c)(1)(D)(iii)). This exception was added to allow compensation in intussusception cases which often required surgical intervention but then resolved in less than six months. *Id.*

## B.   Analysis

My determination is based on a complete review of the record, including all medical records, declarations, arguments, and additional evidence. Specifically, I highlight the following:

- Prior to vaccination, Petitioner suffered from lower back pain, degeneration of lumbar intervertebral disc, lumbosacral radiculopathy, and chronic pain syndrome. *See,* e.g., Exhibit 3 at 47. She also suffered from common conditions such as anxiety, gastrointestinal reflux disease, high blood pressure, insomnia, hypothyroidism, and obesity. *Id.*

- Working as a safety and human resource manager at the time of vaccination, Petitioner (age 47 years) received the third dose of a series of

Hep B vaccines at her workplace on March 14, 2019. Exhibit 1 at 1; Exhibit 4 at 27. The vaccine was administered intramuscularly in her right deltoid. Exhibit 1 at 1. (Petitioner had received the first and second doses of the Hep B vaccine on August 15 and September 16, 2018, respectively). *Id.*

- On April 2, 2019 (19-days post-vaccination), Petitioner visited her PCP, complaining of painful, burning urination for three days. Exhibit 3 at 38. She was diagnosed with a urinary tract infection. *Id.* at 41. She made no mention of shoulder pain at this time.

- On April 17, 2019 (34 days post-vaccination), Petitioner sought treatment pursuant to a workers' compensation claim for soreness in her deltoid and pain in her shoulder since receiving the Hep B vaccine on March 14th. Exhibit 4 at 27. Exhibiting tenderness and limited range of motion ("ROM"), Petitioner was assessed as suffering from a SIRVA injury. *Id.* at 30, 32. She was prescribed oral steroids and physical therapy ("PT") three times a week for two weeks, and placed on work restrictions. *Id.* Specifically, Petitioner was instructed to avoid strenuous pushing or pulling, repetitive or overhead work, or tasks involving the lifting of more than ten pounds. *Id.* at 32.

- At her first PT session, on April 19, 2019, Petitioner reported pain when lifting, pulling, or moving her arm away from her body. Exhibit 5 at 4. She exhibited slight limitations in ROM and decreased strength. *Id.*

- During the subsequent two-week period, Petitioner attended five more PT sessions. Exhibit 5 at 8-20. At her fourth PT session on April 29th, she reported "feeling good." *Id.* at 14. She "had no complaints of pain in the shoulder" despite the addition of new exercises. *Id.*

- At her last PT session on May 2, 2019, Petitioner reported 90 to 95 percent improvement, indicating that her shoulder was not as tender as before. Exhibit 5 at 16. However, she described continued difficulty lifting her purse to the side, reaching backwards, and performing any movement with abduction. Regarding her pain levels, she provided the following estimates: no pain at rest, average pain of two out of ten, and maximum pain of five out of ten. Describing as meeting some, but not all of her short-term goals, Petitioner was provided a home exercise program ("HEP") and instructed to follow up with her treating physician to determine if additional PT was needed. *Id.* at 16, 19. The therapist recommended therapy two times a week for three more weeks. *Id.* at 17. At the end of this record, it is noted that Petitioner was discharged and transitioned to a HEP after the therapist was

5

- unable to reach her and spoke to someone involved in her workers' compensation claim. *Id.* at 19-20.

- On May 10, 2019, Petitioner visited her PCP for her chronic back pain and refills of her medication. Exhibit 3 at 32. She stated that she would be starting a new job on May 13th, and would be "without insurance until July." *Id.* According to a later record, Petitioner's new position was as an accountant. Exhibit 8 at 7.

- On May 13, 2019, Petitioner returned to the nurse practitioner providing treatment pursuant to her workers' compensation. Exhibit 4 at 21-25. She reported that she had completed PT and was feeling much better. *Id.* at 21, 25. Repeating the earlier assessment of a shoulder injury in response to vaccination, the nurse practitioner released Petitioner for full duty. *Id.* at 21, 24-25.

- During the subsequent year, Petitioner visited her PCP on two occasions, on September 19, 2019, and February 24, 2020, for her chronic back pain, high blood pressure, and hypothyroidism. Exhibit 3 at 21-31. There is no mention of right shoulder pain from the records of these visits.

- On May 27. 2020, now more than fourteen months post-vaccination and a year after last seeking treatment, Petitioner returned to the nurse practitioner handling her workers' compensation claim for a follow-up appointment related to her right deltoid and shoulder pain after vaccination. Exhibit 4 at 14. Denying any subsequent injury or fall, Petitioner reported that her pain "ha[d] gotten worse since [the] end of February/beginning [of] March." *Id.* Characterizing Petitioner's symptoms as a recurrence of her right shoulder pain, the nurse practitioner stated that Petitioner's condition improved with PT "but now pain is back." *Id.* at 17. She ordered an MRI. *Id.*

- Performed on June 11, 2020, the MRI revealed "[m]ild supraspinatus and infraspinatus tendinosis without a discrete tear, [p]osterior superior labral tear with tiny paralabral cyst, [a]dhesive capsulitis, [and] [m]ild subacromial subdeltoid bursitis." Exhibit 4 at 13.

- Approximately one month later, Petitioner returned to the workers' compensation nurse practitioner to discuss the result of the MRI. Exhibit 4 at 11. The nurse practitioner ordered the same restrictions in place during April and early May 2019, and referred Petitioner to an orthopedist. *Id.*

6

- Seen by the orthopedist on August 12, 2020, Petitioner reported intermittent pain since its sudden occurrence with vaccination on March 14, 2019. Exhibit 7 at 12. Characterizing her symptoms as moderate to severe, she indicated they were "aggravated by reaching behind and reaching overhead." *Id.* After examining Petitioner and reviewing the results of the June 2020 MRI, the orthopedist opined that the tear seen on the MRI was related to her earlier vaccine incident.[4] *Id.* at 16. He administered an intra-articular cortisone injection, ordered PT, and instructed Petitioner to return within six weeks. *Id.* at 16.

- At her initial PT evaluation on August 17, 2020, Petitioner provided the same, consistent history of right shoulder pain after receiving the Hep B vaccine, improvement with PT, and "a loss of motion and more pain since Feb. 2020." Exhibit 8 at 6. She again described pain which worsened with movement, reaching out to the side, overhead, and behind the back. *Id.* Upon examination, Petitioner exhibited a slight decrease in strength and greater limitations in ROM than previously seen. *Id.* at 7.

- Between late August and early October 2020, Petitioner attended eleven PT sessions. Although she experienced some setbacks, she made good progress. Exhibit 8 at 6-44. For example, on September 17, 2020, Petitioner reported severe pain for a few hours after filing and sorting paperwork, but improvement with over-the-counter pain medication. *Id.* at 30.

- On October 3, 2020, Petitioner was described as meeting all her goals and discharged from PT. Exhibit 8 at 43.

- Two days later, on October 5, 2020, Petitioner visited her PCP for treatment of her chronic back pain and a stye on her eye. Exhibit 3 at 10. There is no mention of right shoulder pain in the record from this visit. *See* Exhibit 3 at 10-15.

- When Petitioner returned to the orthopedist on October 14, 2020, she reported occasional symptoms, continued improvement, completion of the ordered PT, and no current pain. Exhibit 7 at 8. The orthopedist again indicated that Petitioner's partial rotator cuff tear was "work related." *Id.* at 10. Assessing her as exhibiting "excellent range of motion, strength, and

---

[4] In a letter dated August 4, 2020, a representative of the insurance company handling Petitioner's workers' compensation claim requested that the orthopedist "confirm if a tear found on testing well over a year after [the] claim date, could be related to the vaccination incident." Exhibit 7 at 23.

stability" and having zero impairment, the orthopedist indicated Petitioner "ha[d] reached maximum medical improvement" and required no permanent work restrictions. *Id.*

To satisfy the Vaccine Act's severity requirement in this case, a petitioner must show that she suffered the residual effects of her SIRVA injury for more than six months. Section 11(c)(1)(D)(i) (severity requirement for cases not involving death or inpatient hospitalization and surgical intervention). Thus, Ms. Kilgore must establish that her SIRVA sequelae continued beyond at least September 14, 2019 (assuming an onset date from March 14, 2019 – which the record preponderantly supports).[5]

When arguing that Petitioner has failed to meet this requirement, Respondent emphasizes the improvement Petitioner experienced from the six PT sessions she attended in April and May 2019, and the fact that no further treatment was ordered thereafter. Rule 4(c) Report at 7. He stresses the gap in treatment, depicted as nearly fourteen and a half months,[6] before Petitioner returned for further treatment. *Id.*

However, Respondent's characterization of Petitioner's injury as fully resolved, and not requiring further treatment by mid-May 2019, is not supported by the record. Although Petitioner showed significant improvement by her PT discharge in May 2019, her SIRVA injury was not fully resolved. She continued to experience a maximum pain level of five out of ten with certain movements and was assessed as meeting some, but not all short-term goals. For example, Petitioner had met the short-term goal related to pain levels by only 80 percent. Exhibit 5 at 16. Additionally, the therapist recommended further PT, and it appears Petitioner was discharged in part at least, due to an inability to reach her by phone. *Id.* at 17, 19.

I agree that the gap in treatment in this case was significant (and it does speak to the mildness of the SIRVA at issue), but find that concurrent events and the nature of Petitioner's symptoms provide an adequate explanation for Petitioner's failure to seek treatment during this time. Most significantly, Petitioner's job change in mid-May 2019

---

[5] Although some special masters have interpreted the language of Section 11(c)(1)(D)(i) as requiring sequelae beyond six months of the vaccination date, "I believe a more reasonable interpretation is that, since the six-month period measures severity of injury, it cannot begin *before* the time of injury, and hence is properly measured from the date of *onset*." *Castellanos v. Sec'y of Health & Hum. Servs.,* No. 19-1710V, 2022 WL 1482497, at *2 n.5 (Fed. Cl. Spec. Mstr. Mar. 30, 2022); *But see Herren v. Sec'y of Health & Hum. Servs.,* No. 13-1000V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. Feb. 18, 2014) (stating the contrary view – that the six-month period should be calculated from date of vaccination).

[6] Respondent appears to be measuring this gap from the date of vaccination, March 14, 2019, rather than from Petitioner's last 2019 visit to the nurse practitioner, on May 13, 2019. Although the difference is not significant, the amount of time between Petitioner's last visit in 2019, and the treatment she pursued in 2020, is twelve and a half months.

partially explains her failure to follow up regarding any ongoing symptoms and need for further PT. And the fact that Petitioner's pain was mild and intermittent - primarily with certain movements - would explain why she delayed returning for treatment.

Of course, the lengthy gap in treatment is highly relevant to damages, as it not only supports the conclusion that Petitioner's SIRVA was mild enough to tolerate for a long period, but also that intervening circumstances could explain some degree of severity thereafter. But this does *not* mean I cannot find the basic requirement of six months severity met. A treatment gap that includes within it the "expiration date" for severity does not automatically mean severity cannot be established.

The Vaccine Act does not require that a petitioner suffer *consistent* symptoms throughout the six-month period post-vaccination, but instead only that a petitioner suffer the residual effects or complications of the alleged injury for *more than six months* after administration of the vaccine. *See* Section 11(c)(1)(D)(i). In my experience adjudicating SIRVA claims, many petitioners experience some temporary relief during their treatment course (for example, from a cortisone injection or physical therapy) or pain plateaus. Although Respondent correctly observes that Petitioner did not receive a cortisone injection in 2019, an occurrence which may have provided some temporary relief, she did undergo a short duration of PT. And presumedly, Petitioner continued her HEP.

The most significant evidence supporting Petitioner's assertion – that her 2020 symptoms were linked to her 2019 SIRVA injury - is the orthopedist's opinion that the symptoms Petitioner complained of in 2020 were a continuation of her earlier work and vaccine related injury. This opinion from a treating physician, after an examination of Petitioner and the review of her MRI results, has great probative value.

The overall record in this case shows Petitioner suffered at least intermittent pain with certain movements as late as October 2020. Accordingly, I find there is preponderant evidence to establish Petitioner suffered the residual effects of her alleged SIRVA for more than six months.

### III.   Additional Requirements for Entitlement

#### A. Legal Standards

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury (discussed above in Section II), and the lack of other award

or settlement,[7] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a Hep B vaccine. 42 C.F. R. § 100.3(a)(VIII)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[7] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

  (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Analysis

  Respondent has stated no further objections to compensation, and I find Petitioner has otherwise satisfied all criteria for a Table SIRVA injury following receipt of the Hep B vaccine. There is no evidence of prior right shoulder pain, inflammation, or dysfunction or an alternative cause for Petitioner's symptoms. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv) (first and fourth QAI criteria). And the record supports Petitioner's claim of pain onset within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (second QAI criterion). Petitioner consistently reported sudden pain since vaccination. *E.g.,* Exhibit 4 at 27 (first report of pain to the workers' compensation nurse practitioner); Exhibit 5 at 4 (initial PT evaluation in April 2019); Exhibit 4 at 14 (history reported when seeking treatment again in 2020); Exhibit 7 at 12 (first visit to the orthopedist in August 2020); Exhibit 8 at 6 (initial PT evaluation in August 2020). Finally, Petitioner exhibited pain and limitations in ROM solely in her right, injured shoulder. *E.g.,* Exhibit 4 at 30 (first report of pain to the workers' compensation nurse practitioner); Exhibit 5 at 4 (initial PT evaluation in April 2019); Exhibit 8 at 7 (initial PT evaluation in August 2020); *see See* 42 C.F.R. § 100.3(c)(10)(iii) (third QAI criterion).

  As I have determined in this ruling, the record supports a finding that Petitioner suffered the residual effects of her SIRVA for more than six months. *See supra* Section II.B.; Section 11(c)(1)(D)(i) (the Vaccine Act's six-month severity requirement). Additionally, the vaccine record shows Petitioner received the Hep B vaccine at her place of employment in Tennessee. Exhibit 1; Exhibit 4 at 27; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, there is no evidence that Petitioner has collected a civil award for her injury. *See* Section 11(c)(1)(E) (lack of prior civil award). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA and the Vaccine Act's severity requirement needed for both Table and non-Table claims. Petitioner is entitled to compensation in this case.

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master